Peter N. Greenfeld (AZ SBN 020471)
Law Offices of Peter N. Greenfeld, P.C.
1212 East Osborn Road, Suite 115
Phoenix, Arizona 85014
Telephone:  (602) 956-4226
Facsimile:  (602) 956-4232
Email: pgreenfeld@azfranchiseelaw.com
Attorney for Defendant and Counterclaimant

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| International Franchise Solutions, LLC, an Arizona limited liability company, | Case No. CV-13-00086-PHX-DGC |
| Plaintiff, | **DEFENDANT'S ANSWER AND COUNTERCLAIM FOR:** |
| vs. | **1)Breach of Contract;** |
| BizCard Xpress, LLC, a Florida limited liability company, JOHN and JANE DOE I-V; and ABC Entities I-V, a corporation or other legal entities; | **2) Negligence;** |
| | **3) Negligent Misrepresentation;** |
| Defendants. | **4) Intentional Misrepresentation;** |
| | **5) Breach of the Implied Covenant of Good Faith and Fair Dealing; and** |
| | **6) Unjust Enrichment** |
| | (Jury Trial Demanded) |

NOW COMES, the Defendant, BizCard Xpress, LLC ("BizCard"), by and through undersigned counsel, and answers the claims of the Plaintiff, International Franchise Solutions, LLC ("IFS"), as follows:

1

**PARTIES; JURISDICTION; VENUE**

1.     BizCard admits the allegations contained in Paragraph 1 of the Complaint.

2.     BizCard admits the allegations contained in Paragraph 2 of the Complaint.

3.     BizCard admits that it entered into the contract identified in Paragraph 10 of this Complaint but denies the remainder of the facts and allegations set forth in Paragraph 3 of the Complaint.

4.     BizCard is without sufficient knowledge to admit or deny the facts and allegations set forth in Paragraph 4 of the Complaint and therefore denies the same.

5.     BizCard is without sufficient knowledge to admit or deny the facts and allegations set forth in Paragraph 5 of the Complaint and therefore denies the same.

6.     BizCard is without sufficient knowledge to admit or deny the facts and allegations set forth in Paragraph 6 of the Complaint and therefore denies the same[1].

7.     BizCard is without sufficient knowledge to admit or deny the facts and allegations set forth in Paragraph 7 of the Complaint and therefore denies the same.

8.     BizCard is without sufficient knowledge to admit or deny the facts and allegations set forth in Paragraph 8 of the Complaint and therefore denies the same.

9.     BizCard denies the allegations contained in Paragraph 9 of the Complaint.

4489815.8

## **GENERAL ALLEGATIONS**

10.     BizCard admits the facts and allegations set forth in Paragraph 10 of the Complaint.

11.     BizCard admits the Contract, which speaks for itself, required Plaintiff to provide to Defendants certain franchise development, franchise sales and other related services.

12.     BizCard admits the Contract, which speaks for itself, addresses the issue of payment for services rendered.  BizCard denies the remainder of facts and allegations set forth in Paragraph 12 of the Complaint

13.     BizCard denies the facts and allegations set forth in Paragraph 13 of the Complaint.

14.     BizCard denies the facts and allegations set forth in Paragraph 14 of the Complaint.

15.     BizCard denies the facts and allegations set forth in Paragraph 15 of the Complaint.

16.     BizCard denies the facts and allegations set forth in Paragraph 16 of the Complaint.

---

[1] The first six paragraphs of Plaintiff's Complaint are numbered 1-6; the paragraphs that follow are numbered 5-33.  To conform with standard numbering practice, BizCard refers to the paragraphs that follow the first six paragraphs as paragraphs 7-35.

4489815.8

17.     BizCard denies the facts and allegations set forth in Paragraph 17 of the Complaint.

18.     BizCard denies the facts and allegations set forth in Paragraph 18 of the Complaint.

19.     BizCard denies the facts and allegations set forth in Paragraph 19 of the Complaint.

20.     BizCard admits the Contract, which speaks for itself, contemplates Plaintiff obtaining an ownership interest in an entity called BizCard Xpress Development, LLC, which is not a party to this case.  BizCard denies the remainder of facts and allegations set forth in Paragraph 20 of the Complaint that relate to it as a Defendant.  As to the remaining Defendants, BizCard is without sufficient knowledge to admit or deny the remainder of the facts and allegations set forth in Paragraph 20 of the Complaint and therefore denies the same.

21.     BizCard denies the facts and allegations set forth in Paragraph 21 of the Complaint.

22.     BizCard admits the Contract, which speaks for itself, addresses the issues of Plaintiff obtaining compensation for services rendered.  BizCard denies the remainder of facts and allegations set forth in Paragraph 22 of the Complaint that relate to it as a Defendant.  As to the remaining Defendants, BizCard is without sufficient knowledge to

4489815.8

admit or deny the remainder of the facts and allegations set forth in Paragraph 22 of the Complaint and therefore denies the same.

23.    BizCard denies the facts and allegations set forth in Paragraph 23 of the Complaint.

## CLAIMS FOR RELIEF
## COUNT ONE
### *(Breach of Contract)*

24.    BizCard repeats and incorporates the preceding paragraphs as if fully set forth herein.

25.    BizCard denies the allegations contained in Paragraph 25 of the Complaint.

26.    BizCard denies the allegations contained in Paragraph 26 of the Complaint.

27.    BizCard denies the allegations contained in Paragraph 27 of the Complaint.


WHEREFORE, BizCard respectfully requests that judgment be entered:

A.    Dismissing the Complaint;

B.    Awarding BizCard the costs of suit;

C.    Awarding BizCard reasonable and necessary attorney attorneys' fees pursuant to A.R.S.§ 12-341.01; and

D.    For such other and further relief as to the Court may deem proper.

## COUNT TWO
### *(Breach of Duty of Good Faith and Fair Dealing)*

28.     BizCard repeats and incorporates the preceding paragraphs as if fully set forth herein.

29.     BizCard admits the allegations contained in Paragraph 29 of the Complaint.

30.     BizCard denies the allegations contained in Paragraph 30 of the Complaint.

31.     BizCard denies the allegations contained in Paragraph 31 of the Complaint.

32.     BizCard denies the allegations contained in Paragraph 32 of the Complaint.

WHEREFORE, BizCard respectfully requests that judgment be entered:

A.      Dismissing the Complaint;

B.      Awarding BizCard the costs of suit;

C.      Awarding BizCard reasonable and necessary attorney attorneys' fees pursuant to A.R.S. § 12-341.01; and

D.      For such other and further relief as to the Court may deem proper.

## COUNT THREE
### *(Unjust Enrichment)*

33.     BizCard repeats and incorporates the preceding paragraphs as if fully set forth herein.

6

4489815.8

34.     BizCard denies the allegations contained in Paragraph 34 of the Complaint.

35.     BizCard denies the allegations contained in Paragraph 35 of the Complaint.

WHEREFORE, BizCard respectfully requests that judgment be entered:

A.      Dismissing the Complaint;

B.      Awarding BizCard the costs of suit, including its reasonable and necessary attorneys' fees; and

C.      For such other and further relief as to the Court may deem proper.

## AFFIRMATIVE DEFENSES

1.      BizCard affirmatively defends by stating that Plaintiff's counts fail to state a claim upon which relief can be granted.

2.      BizCard affirmatively defends by stating that Plaintiff's Complaint is barred by Plaintiff's material breach of the Agreement, as well as related agreements, by and between the parties.

3.      BizCard affirmatively defends by stating that Plaintiff's Complaint is barred by the doctrine of unclean hands.

4.      BizCard affirmatively defends by stating that Plaintiff's Complaint is barred by the doctrine of estoppel.

7

5. BizCard affirmatively defends by stating that whatever damages the Plaintiff may have sustained were the result of its own negligence, which negligence was equal to or greater than that of BizCard.

6. BizCard affirmatively defends by stating that Plaintiff's Complaint is barred by failure of consideration.

7. BizCard affirmatively defends by stating that Plaintiff failed to properly serve the Complaint on BizCard.

8. BizCard affirmatively defends by stating that the Agreement, which Plaintiff is seeking to enforce is void or voidable.

9. BizCard affirmatively defends by stating that Plaintiff's claims, if any, are barred in whole or part by the doctrine of set-off.

10. BizCard affirmatively defends by stating that this action arises out of a contract and pursuant to A.R.S. § 12-341.01 BizCard is entitled to its reasonable and necessary attorney attorneys' fees.

## COUNTERCLAIM

Defendant/Counterclaim Plaintiff, BizCard Xpress, LLC, for its Counterclaim against Plaintiff /Counterclaim Defendant International Franchise Solutions, LLC, hereby alleges the following:

4489815.8

## PARTIES

1.      BizCard Xpress, LLC ("BizCard") is a Florida limited liability company with a principal place of business in Flagler Beach, Florida.

2.      International Franchise Solutions, LLC ("IFS") is an Arizona limited liability company with a principal place of business in Mesa, Arizona.

## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this matter based upon diversity of citizenship under 28 U.S.C. § 1332(a).

4.      Venue is proper in this Court under 28 USC § 1391.

## FACTUAL BACKGROUND

5.      This dispute arises out of a franchise development and sales relationship between BizCard and IFS.

6.      BizCard, which was started in 2010, is in the business of selling, training and developing franchises.

7.      BizCard franchisees operate retail businesses which provide, among other things, printing and sign services made available to the general public in as little as one hour, and offer a complete array of business and promotional products and services.

9

8.      From the outset, BizCard sold franchises in a variety of ways, including, without limitation, by advertising on the internet through franchise sales portals and by using franchise sales brokers such as Franchise Alliance.

9.      In late 2011, Dan Olsen was introduced to representatives of BizCard through a business broker.

10.     Mr. Olsen represented himself, IFS, and its affiliate, Franchise Growth Systems ("FGS") as the leading and most comprehensive and respected franchise start-up and expansion firm in the United States with decades of successful experience in helping start up franchise companies.  He said if BizCard became a client, he and his team at IFS and FGS would carefully study the core of BizCard's business so they could understand it in a meaningful way that would allow them to help BizCard achieve its full economic potential

11.     As part of these initial discussions, Mr. Olsen represented that IFS and FGS had sophisticated, unique, and proprietary mapping software that created customized franchise territories for each client that optimized the short- and long-term economic value of each franchise system (hereinafter the "Mapping Software").

12.     Mr. Olsen also represented that IFS and FGS had a sophisticated team of franchise sales brokers dedicated to helping their clients, which would eliminate the need

4489815.8

for BizCard to pay money to work directly with franchise sales brokers who are commonly used to identify and facilitate sales to prospective franchisees in exchange for a percentage of the franchise fee.  The role of franchise sales brokers is somewhat analogous to brokers who help sell small businesses.

13.     At no time during these discussions did Mr. Olsen, or anyone from IFS or FGS, mention the numerous failed franchise business ventures Mr. Olsen had been involved in over the past twenty years; that the Mapping Software was nothing more than a standard, off-the-shelf commercially available software program with no unique or customized features that give franchise systems any special ability to customize their franchise territories to maximize their short- or long-term economic value; or that the IFS team of franchise sales brokers was actually a subcontract agreement with Franchise Alliance, another franchise sales broker .

14.     Based on these and other representations made by Mr. Olsen and other representatives of IFS and FGS, BizCard, in January 2012 entered into the Franchise Development and Sales Agreement with IFS that is attached to the Complaint as Exhibit A.

15.     Almost immediately after it was finalized, it became apparent that IFS had no intention of honoring the terms of the Agreement or fulfilling the promises Mr. Olsen had made to convince BizCard to enter into the Agreement.

4489815.8

16.     IFS did virtually no independent assessment, analysis, or evaluation of BizCard's franchise system.  Nor did IFS ask questions about or try to understand BizCard's franchise concept.

17.     Instead, IFS quickly divided the United States into 54 Master Territories based on Standard Rate and Data boundaries[2] designed for television advertising, using an off-the-shelf, commercially available software program, and contracted with Franchise Alliance to sell the franchise territories--the very same network of franchise sales brokers that BizCard had been working with before it entered into the Agreement with IFS.

18.     Many of the territories were sold to the very brokers that were hired to sell the territories in the first place.  Impressed that brokers were interested in buying territories, BizCard initially thought it had a winning business model.  But it soon discovered that the territories IFS had designed for it were grossly oversized and undervalued.  When confronted with this reality, one of the IFS broker/master developers was said: "Hell, I bought the whole territory and a pilot store for only $60,000, [it was] a total no-brainer!"

_____

[2] Standard Rate and Data Service (SRDS) is a leading provider of media rates and data, connecting buyers and sellers through sources that offer comprehensive coverage of traditional media - such as magazines, newspapers, television, direct marketing and radio - as well as alternative marketing opportunities - such as online and out-of-home.

4489815.8

19.     Rather than providing sophisticated, customized support services, IFS provided virtually no independent support or services to BizCard, and significantly upcharged for services that BizCard had already been using to sell its franchises, or that it could have obtained by searching the internet for publicly available mapping software programs.

20.     This evolving scenario was nothing like what Dan Olsen had promised or what IFS was required to provide BizCard pursuant to the terms of the Franchise Development and Sales Agreement.

21.     When confronted with these and other related issues, Mr. Olsen repeatedly denied wrongdoing, declined to take any responsibility, and did little or nothing to address BizCard's concerns – other than to repeatedly reference his 20-plus years of success in the franchise industry and demand to be compensated.

22.     Further investigation unveiled multiple stories of Mr. Olsen's failed franchise ventures and the use of multiple business names to avoid a connection to complaints by former customers, which BizCard is only beginning to understand and piece together.

4489815.8

23.     These stories paint a completely different picture of Mr. Olsen, IFS, and FGS than the one he and his company presented to BizCard prior to entering into the Agreement.

24.     The culmination of these experiences, conversations and information led BizCard to conclude it had been sold something akin to a late night television infomercial special or a useless quick start manual, less valuable even than a one- or two-day training seminar.  In other words, BizCard realized it was paying for the privilege of continuing to operate on its own, without the benefit of the assistance of an experienced franchise consultant or consulting company it had been promised by Mr. Olsen and IFS.

25.     As a result, BizCard reluctantly decided to pay the Franchise Alliance brokers for their portion of the franchise territories that had been sold and to terminate the Agreement with IFS.  IFS then commenced this lawsuit against BizCard.

## COUNT I
## Breach of Contract

26.     BizCard repeats and realleges the allegations made in the preceding paragraphs as if set forth in full herein.

27.     BizCard entered into the Agreement with IFS in exchange for payment.

28.     The Agreement required that IFS, among other things, provide BizCard with a variety of franchise consulting, sales and territory mapping services.

14

4489815.8

29.     IFS materially breached the Agreement by failing to provide the services promised in the Agreement.

30.     As a direct and proximate consequence of IFS's breaches, BizCard has sustained pecuniary losses.

31.     This Action arises out of a contract and pursuant to A.R.S. § 12-341.01 BizCard is entitled to its costs and reasonable attorneys' fees.

## COUNT II
## Negligence

32.     BizCard repeats and realleges the allegations made in the preceding paragraphs as if set forth in full herein.

33.     As a franchise sales and business consulting company, IFS has a duty to perform the professional services it offers with the degree of skill, care and competence that would be expected of a reasonably skilled and competent professional in the same field.

34.     IFS held itself out as capable of providing the consulting, franchise sales, and territory mapping services described in the Agreement in a timely and professional manner.

35.     IFS breached the duties it owed to BizCard by, among other things, failing to provide customized franchise territory mapping software/services; to competently

4489815.8

provide franchise consulting or sales services promised in the Agreement; and/or in some instances to provide them at all.

36.     As a direct and proximate consequence of IFS's breaches, BizCard has sustained pecuniary losses.

**COUNT III**
**Negligent Misrepresentation**

37.     BizCard repeats and realleges the allegations made in the preceding paragraphs as if set forth in full herein.

38.     Mr. Olsen and IFS represented, among other things, that IFS and its affiliate, Franchise Growth Systems ("FGS") were the leading and most comprehensive and respected franchise start-up and expansion firm in the United States with decades of successful experience in helping start up franchise companies.  Mr. Olsen said if BizCard became a client, he and his team at IFS and FGS would carefully study the core of BizCard's business so they could understand it in a meaningful way that would allow them to help BizCard achieve its full economic potential.

39.     As part of these initial discussions, Mr. Olsen represented that IFS and FGS had sophisticated, unique and proprietary Mapping Software that created customized franchise territories for each client that optimized the short- and long-term economic value of each franchise system.

16

40.     Mr. Olsen also represented that IFS and FGS had a sophisticated team of franchise sales brokers dedicated to helping IFS and FGS clients, which would eliminate the need for BizCard to pay money to work directly with franchise sales brokerage systems.

41.     Mr. Olsen and IFS should have known that these representations were false, as they were not capable of performing the services outlined in Paragraphs 37-39 and did not have the capabilities to provide their own system of dedicated franchise brokers or a sophisticated, unique and proprietary mapping software that created customized franchise territories for each client that optimized the short- and long-term economic benefit of each franchise system.

42.     Mr. Olsen and IFS made these representations to induce BizCard to enter into the Agreement.

43.     BizCard relied upon Mr. Olsen's and IFS's representations in deciding to enter into the Agreement.

44.     As a direct and proximate consequence of the BizCard's reliance on Mr. Olsen's and IFS's misrepresentations, BizCard has sustained pecuniary losses.

**COUNT IV**
**Intentional Misrepresentation**

45.     BizCard repeats and realleges the allegations made in the preceding paragraphs as if set forth in full herein.

17

4489815.8

46.     Mr. Olsen and IFS represented, among other things, that IFS and its affiliate, Franchise Growth Systems ("FGS") were the leading and most comprehensive and respected franchise start-up and expansion firm in the United States with decades of successful experience in helping start up franchise companies.  Mr. Olsen said if BizCard became a client, he and his team at IFS and FGS would carefully study the core of BizCard's business so they could understand it in a meaningful way that would allow them to help BizCard achieve its full economic potential.

47.     As part of these initial discussions, Mr. Olsen represented that IFS and FGS had sophisticated, unique and proprietary Mapping Software that created customized franchise territories for each client that optimized the short and long term economic value of each franchise system.

48.     Mr. Olsen also represented that IFS and FGS had a sophisticated team of franchise sales brokers dedicated to help IFS and FGS clients, which would eliminate the need for BizCard to pay money to work directly with franchise sales brokerage systems.

49.     Mr. Olsen and IFS knew that these representations were false, as they were not capable of performing the services outlined in Paragraphs 37-39 and that they did not have the capabilities to provide their own system of dedicated franchise brokers or a sophisticated, unique and proprietary mapping software that created customized franchise territories for each client that optimized the short- and long-term economic benefit of

4489815.8

each franchise system.  Mr. Olsen and IFS's conduct were guided by an evil hand, thereby entitling BizCard to punitive damages in an amount necessary to deter IFS and others from engaging in similar conduct in the future.

50.     Mr. Olsen and IFS made these representations to induce BizCard to enter into the Agreement.

51.     BizCard reasonably relied upon Mr. Olsen's and IFS's representations in deciding to enter into the Agreement.

52.     As a direct and proximate consequence of the BizCard's reliance on Mr. Olsen's and IFS's intentional misrepresentations, BizCard has sustained pecuniary losses.

## COUNT V
## Breach of Implied Covenant of Good Faith and Fair Dealing

53     BizCard repeats and realleges the allegations made in the preceding paragraphs as if set forth in full herein.

54.     IFS agreed in its contract with BizCard to provide, among other things, franchise sales, consulting, and territory mapping assistance in exchange for payment from BizCard.

55.     Under Arizona law, every contract includes an implied covenant of good faith and fair dealing.

56.     IFS breached the implied covenant of good faith and fair dealing in its contract with BizCard.

19

4489815.8

57.     As a direct and proximate result of IFS's breaches, BizCard has sustained pecuniary losses.

58.     This Action arises out of a contract and pursuant to A.R.S. § 12-341.01 BizCard is entitled to its costs and reasonable attorneys' fees.

## COUNT VI
## Unjust Enrichment

59.     BizCard repeats and realleges the allegations made in the preceding paragraphs as if set forth in full herein.

60.     BizCard conferred a benefit upon IFS, in the form of payment of money.

61.     IFS knew that BizCard had conferred this benefit upon IFS.

62.     IFS accepted and retained the benefit it received from BizCard under such circumstances as to make it inequitable for IFS to retain it without having given services or goods (or other compensation) of equal value in exchange.

63.     As a direct and proximate consequence of this conduct by IFS, BizCard sustained pecuniary losses.

## RELIEF REQUESTED

BizCard Xpress, LLC, respectfully request that the Court enter judgment in its favor on all counts and award it the following relief:

a.     An Order adjudging and declaring that IFS breached, and BizCard was justified in terminating, the Agreement;

4489815.8

b.      Damages caused by IFS's breach of contract and/or its breach of the duty of good faith and fair dealing;

c.      Damages for unearned amounts BizCard paid to IFS;

d.      Restitutionary damages;

e.      Damages for loss of business and business opportunities caused by IFS's tortious conduct;

f.      Punitive and/or treble damages as the Court deems appropriate;

g.      Attorney's fees and costs associated with prosecuting these claims;

h.      Pre-judgment and post-judgment interest on the damages caused by IFS; and

i.      All other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 22nd day of January, 2013.

LAW OFFICES OF PETER N. GREENFELD, P.C

By:_____s/Peter N. Greenfeld_____
        Peter N. Greenfeld
        Attorney for Defendant and
        Counterclaimant

4489815.8

## DEMAND FOR JURY TRIAL

Defendant demands a jury trial for all issues and claims so triable

RESPECTFULLY SUBMITTED this 22nd day of January, 2013.

LAW OFFICES OF PETER N.
GREENFELD, P.C

By:_____//S//_____
        Peter N. Greenfeld
        Attorney for Plaintiffs

22

## **CERTIFICATE OF SERVICE**

I certify that on January 22, 2013 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to those attorneys registered with the CM/ECF:.

**Plaintiff's and Counterdefendant's Counsel**
Brad A. Denton, Esq.
Bert D. Millett, Esq.
Gunderson, Denton & Peterson, P.C.
1930 North Arboleda Road
Suite 201
Mesa, Arizona  85213

By      /s/ Peter N. Greenfeld

4489815.8